```
              IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF PUERTO RICO
```

| | |
|---|---|
| YADIRA GALARZA-CRUZ,<br><br>**Plaintiff**,<br><br>v.<br><br>GRUPO HIMA SAN PABLO, INC.;<br>CENTRO MÉDICO DEL TURABO, INC.;<br>JOCAR ENTERPRISES CORP.;<br>FERNADNO RODRÍGUEZ; LIBERTY<br>INTERNATIONAL UNDERWRITERS; JOHN<br>DOE; JANE ROE; INSURANCE<br>COMPANIES B AND C<br><br>**Defendants**. | **CIVIL NO.** 17-1606 (RAM) |

## OPINION AND ORDER

RAÚL M. ARIAS-MARXUACH, U.S. District Judge

Pending before the Court is co-defendant Liberty Mutual Insurance Company's *Motion for Summary Judgment and Memorandum in Support*, accompanied by a *Statement of Uncontested Material Facts*. (Docket Nos. 84 and 84-1). For the reasons discussed below, having considered the parties' submissions both in opposition and support of the same, the Court hereby **GRANTS** Defendants' *Motion for Summary Judgment*. (Docket No. 84).

### I. PROCEDURAL BACKGROUND

On May 8, 2017, Plaintiff Yadira Galarza-Cruz ("Galarza" or "Plaintiff") sued Grupo HIMA San Pablo, Inc. ("Grupo HIMA"); JOCAR Enterprises, Inc. ("JOCAR"); Centro Médico del Turabo, Inc.

("CMT"); Joaquín Rodríguez; and Fernando Rodríguez for sex discrimination, retaliation, wrongful discharge and damages pursuant to Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.* ("Title VII") and various Puerto Rico labor statutes.[1] (Docket No. 1). On January 8, 2018, this Court granted the co-defendants' motions to dismiss and issued a Memorandum and Order dismissing various of Plaintiff's claims. (Docket No. 39).

Plaintiff subsequently filed an *Amended Complaint*, substituting the previously unnamed co-defendant "insurance Company A" with Liberty Mutual Insurance Company ("Liberty" or "Liberty Mutual"), who issued an insurance policy to Grupo HIMA. (Docket No. 46 ¶¶ 24-25. Plaintiff also dropped Joaquin Rodríguez as a co-defendant and eliminated several claims, pursuant to the Memorandum and Order. Id. The remaining co-defendants, including Liberty, filed timely, individual answers to the *Amended Complaint*. (Docket Nos. 48, 49, 50, 51, 55).

In its *Answer to the Amended Complaint*, Liberty asserted the following affirmative defenses:

> 24. Liberty raises as an affirmative defense all the terms, conditions, limitations,

---

[1] Specifically, Puerto Rico's general anti-discrimination statute, Law No. 100 of June 30, 1959, P.R. Laws Ann. tit. 29 §§ 146, *et seq.* ("Law 100"); Puerto Rico Law No. 17 of April 22, 1988, P.R. Laws Ann. tit. 29 §§ 155, *et seq.* ("Law 17"); Puerto Rico Law No. 69 of July 6, 1985, P.R. Laws Ann. tit. 29 §§ 1321, *et seq.* ("Law 69"); Puerto Rico Law No. 115 of December 20, 1991, P.R. Laws Ann. 29 §§ 194, *et seq.* ("Law 115"); Puerto Rico's Unjust Discharge Act, Law No. 80 of May 30, 1976, P.R. Laws Ann. tit. 29 §§ 185a, *et seq.* ("Law 80"); Articles 1802 and 1803 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31 §§ 5141 and 5142; and Sections 1, 8 and 16 of Article II of the Puerto Rico Constitution.

> exclusions, endorsements and immunities contained in the applicable insurance policy, titled "Executive Advantage Policy", policy number VKUDO-000197-16 issued to Grupo HIMA San Pablo, Inc. (hereinafter "the Insured") for the policy period of December 31, 2016 and December 31, 2017 (hereinafter "the Policy").
>
> […]
>
> 29. Liberty reserves the right to deny coverage for the instant case due to noncompliance with the notice requirement under the Policy and under any other policy issued by Liberty to the Insured, for any of the claims raised by Plaintiff against the Insured.
>
> 30. Liberty reserves the right to deny coverage for the instant case under any of the terms, exclusions, conditions and endorsements of the Policy and under any other policy issued by Liberty to the Insured.

(Docket No. 55 at 17-18).

On May 31, 2019, Liberty filed a *Motion for Summary Judgment and Memorandum in Support*, with an accompanying *Statement of Uncontested Material Facts*. (Docket Nos. 84 and 84-1). Essentially, Liberty alleges that Grupo HIMA failed to timely report Plaintiff's initial claim against it in accordance with the terms and conditions of Liberty's insurance policy. (Docket No. 84 at 5). Accordingly, Liberty contends that Galarza's *Amended Complaint* is not afforded coverage under said policy. Id.

Co-defendants Grupo HIMA, CMT, JOCAR, and Fernando Rodríguez (collectively the "HIMA Defendants") filed a joint *Response to Liberty Mutual's Motion for Summary Judgment* claiming that Liberty

did not raise the coverage issue in a timely manner that would allow them to conduct discovery. (Docket No. 98). Moreover, they argue that Liberty needs to file a cross-claim to assert the lack of coverage. Id. at 3. The HIMA Defendants also contend that Liberty "is estopped from denying coverage for failure to notify because the past practices between the parties created the reasonable expectation that coverage would be granted." Id. at 10.

Lastly, Liberty filed a *Reply* and the HIMA Defendants filed a *Sur-Reply*. (Docket Nos. 114 and 124, respectively). Galarza did not file a response.

## II.  LEGAL STANDARD

Motions for summary judgment are governed by Fed. R. Civ. P. 56(a). Summary judgment is proper if the movant shows that (1) there is no genuine dispute as to any material fact and (2) they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A dispute is 'genuine' if the evidence about the fact is such that a reasonable jury could resolve the point in favor of the non-moving party." Thompson v. Coca-Cola Co., 522 F.3d 168, 175 (1st Cir. 2008). A fact is considered material if it "may potentially 'affect the outcome of the suit under governing law.'" Albite v. Polytechnic Univ. of Puerto Rico, Inc., 5 F. Supp. 3d 191, 195 (D.P.R. 2014) (quoting Sands v. Ridefilm Corp., 212 F.3d 657, 660-661 (1st Cir. 2000)).

The moving party has "the initial burden of demonstrat[ing] the absence of a genuine issue of material fact with definite and competent evidence." Mercado-Reyes v. City of Angels, Inc., 320 F. Supp. 344, at 347 (D.P.R. 2018) (quotation omitted). The burden then shifts to the nonmovant, to present "competent evidence to rebut the motion." Bautista Cayman Asset Co. v. Terra II MC & P, Inc., 2020 WL 118592, at 6* (quoting Méndez-Laboy v. Abbott Lab., 424 F.3d 35, 37 (1st Cir. 2005)). A nonmoving party must show "that a trialworthy issue persists." Paul v. Murphy, 948 F.3d 42, 49 (1st Cir. 2020) (quotation omitted).

While a court will draw all reasonable inferences in favor of the non-movant, it will disregard conclusory allegations, unsupported speculation and improbable inferences. *See* Johnson v. Duxbury, Massachusetts, 931 F.3d 102, 105 (1st Cir. 2019). Moreover, the existence of "some alleged factual dispute between the parties will not affect an otherwise properly supported motion for summary judgment." Scott v. Harris, 550 U.S. 372, 379 (2007) (quotation omitted). The court must review the record in its entirety and **refrain from making credibility determinations or weighing the evidence**. *See* Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 135 (2000).

In this District, summary judgment is also governed by Local Rule 56. *See* L. CV. R. 56(c). Per this Rule, an opposing party must "admit, deny or qualify the facts supporting the motion for

summary judgment by reference to each numbered paragraph of the moving party's statement of material facts." Id. Furthermore, unless the fact is admitted, the opposing party must support each denial or qualification with a record citation. Id.

Additionally, Local Rule 56(c) allows an opposing party to submit additional facts "in a separate section." L. CV. R. 56(c). Given that the plain language of Local Rule 56(c) specifically requires that any additional facts be stated in a separate section, parties are prohibited from incorporating numerous additional facts within their opposition. *See* Natal Pérez v. Oriental Bank & Trust, 291 F. Supp. 3d 215, 218-219 (D.P.R. 2018) (quoting Carreras v. Sajo, Garcia & Partners, 596 F.3d 25, 32 (1st Cir. 2010) and Malave-Torres v. Cusido, 919 F.Supp. 2d 198, 207 (D.P.R. 2013)).

If a party opposing summary judgment fails to comply with Local Rule 56(c)'s strictures, "a district court is free, in the exercise of its sound discretion, to accept the moving party's facts as stated." Caban Hernandez v. Philip Morris USA, Inc., 486 F.3d 1, 7 (1st Cir. 2007). Thus, litigants ignore this rule at their peril. *See* Natal Pérez, 291 F. Supp. 3d at 219 (citations omitted).

### III. FINDINGS OF FACT

To make findings of fact, the Court analyzed Liberty's *Statement of Uncontested Material Facts* (Docket No. 84-1), *HIMA'S Response to Liberty Mutual's Statement of Uncontested Facts*

(Docket No. 98-1 at 1-3), including the HIMA Defendants' *Additional Statement of Uncontested Facts* (Docket No. 98-1 at 4-5), and Liberty's Reply Statement of Uncontested Material Facts. (Docket No. 114-1).

After **only crediting material facts** that are **properly supported by a record citation and uncontroverted**, the Court makes the following findings of fact[2]:

**A. Terms of the Insurance Policy**

1. Liberty Mutual Insurance Company, issued an "Executive Advantage Policy", policy number VKUDO-000197-16 to Grupo HIMA San Pablo, Inc. (hereinafter "the Insured" or "Grupo HIMA")) for the Policy Period of December 31, 2016 and December 31, 2017 (hereinafter "the Policy"). (Docket No. 84-1 ¶ 1).

2. The Policy is a "claims made policy." Id. ¶ 2.

3. Pursuant to the Policy's declarations and terms, it "covers only claims first made against the insureds during the policy period or discovery period if applicable, and reported to the insurer as soon as practicable but in no event later than 60 days after the end of the policy period or discovery period if applicable." (Docket Nos. 84-1 ¶ 2; 84-2 at 1, 6).

---

[2] References to a specific Finding of Fact shall be cited in the following manner: (Fact ¶ _).

4. Likewise, Section 7 of the Policy establishes the following reporting requirement: "The Insureds, as a condition precedent to their rights under this Policy, shall report every Claim to the Insurer as soon as practicable but in no event later than 60 days after the end of the Policy Period or Discovery Period, if applicable." (Docket No. 84-2 at 6).

5. Pursuant to the Policy, "Policy Period means the period from the inception date set forth in Item II of the Declarations to the expiration date set forth in Item II of the Declarations, or its earlier termination pursuant to Section 23." (Docket Nos. 84-1 ¶ 5; 84-2 at 11).

6. Item II of the Declaration states that the Policy Period's Inception Date is December 31, 2016 and its Expiration Date is December 31, 2017. (Docket No. 84-2 at 1).

7. The definition of "Claim" in the Policy is the following:

    (a) a written demand for monetary or non-monetary relief against an Insured Person or, with respect to Insuring Agreement 1.3, against the Insured Organization;

    (b) a civil or criminal proceeding or arbitration against an Insured Person or, with respect to Insuring Agreement 1.3, against the Insured Organization;

    (c) an arbitration or formal administrative or regulatory proceeding against an Insured Person or, with respect to Insuring Agreement 1.3, against the Insured Organization, including but not limited to a proceeding before the Equal Employment Opportunity Commission, or similar state agency; or

   (d) a formal criminal, administrative or regulatory investigation against an Insured Person or, with respect to Insuring Agreement 1.3, against the Insured Organization, including but not limited to an investigation by the Equal Employment Opportunity Commission or similar state agency; including any appeal therefrom. A Claim will be deemed first made on the date an Insured receives a written demand, complaint, indictment, notice of charges, or order of formal investigation.

 (Docket Nos. 84-1 ¶ 3; 84-2 at 15).

8. Section 9.2 of the Policy provides that "All Claims arising from the same Wrongful Act or Interrelated Wrongful Acts shall be deemed one Claim and subject to a single limit of liability. Such Claim shall be deemed first made on the date the earliest of such Claims is first made, regardless of whether such date is before or during the Policy Period." (Docket Nos. 84-1 ¶ 4; 84-2 at 7).

9. Insuring Agreement 1.1 of the Policy provides coverage on behalf of the Insured for all Insured Persons for all Loss which they shall become legally obligated to pay as a result of a Claim first made during the Policy Period or Discovery Period, if applicable, against the Insured Persons for a Wrongful Act which takes place before or during the Policy. (Docket Nos. 84-1 ¶ 6; 84-2 at 3).

10. Insuring Agreement 1.2 of the Policy establishes that the Insurer shall pay on behalf of the Insured Organization for

all Loss, which it is permitted or required by law to indemnify the Insured Persons as a result of a Claim first made during the Policy Period or Discovery Period, if applicable, against the Insured Persons for a Wrongful Act, which take place before or during the Policy Period. (Docket Nos. 84-1 ¶ 7; 84-2 at 3).

11. In addition, pursuant to Insuring Agreement 1.3, as Amended by Endorsement #1 of the Policy, the Insurer shall pay on behalf of the Insured Organization for all Loss which it shall become legally obligated to pay as a result of a Claim, including an Employment Practices Action or a Securities Action first made during the Policy Period or Discovery Period, if applicable, against the Insured Organization for a Wrongful Act which takes place before or during the Policy Period. (Docket No. 84-1 ¶ 8; 84-2 at 13).

12. Grupo HIMA San Pablo, Inc. has acquired insurance policies annually from Liberty Mutual Insurance Company since at least 2010. (Docket No. 98-1 at 4 ¶ 1).

**B. Galarza's Claims**

13. On June 30, 2016, Galarza, through her attorney, notified to the Insured a written request for monetary compensation to settle her workplace discrimination claims. (Docket Nos. 84-1 ¶ 9; 84-4 at 2).

14. On that same date, June 30, 2016, Ms. Heidi L. Rodríguez Benítez, the Insured's Executive Vice President and General Legal Counsel, acknowledged receipt of such communication in representation of the Defendants. Id.

15. On July 11, 2016, Plaintiff filed a Charge of Discrimination against the HIMA Defendants before the Anti-Discrimination Unit of the Puerto Rico Department of Labor and Human Resources, Charge No. uadau 16-312ch and the Equal Employment Opportunity Commission (hereinafter "the EEOC"), EEOC Charge No. 16H-2016-00475C. Id. ¶ 10.

16. On May 8, 2017, Plaintiff filed her *Complaint* in this case against the HIMA Defendants, which are Insureds under the Policy. Id. ¶ 11.

17. On June 15, 2017, the Insureds notified Liberty the *Complaint*. This constituted the first time that the Insureds reported to Liberty the existence of Galarza's alleged sexual harassment, discrimination, retaliation and unjust termination claims. Id. ¶ 12.

18. The Insureds did not report Plaintiff's prior written demand requesting monetary relief nor her administrative Charge of Discrimination. Id. ¶ 13.

19. Galarza's *Complaint* incorporated the same claims of alleged sexual harassment, discrimination, retaliation and unjust

termination contained in her written settlement demand and her administrative charge of discrimination. Id. ¶¶ 14-15.

## IV. APPLICABLE LAW

The Insurance Code of Puerto Rico (the "Insurance Code") governs insurance contracts, known as policies, in Puerto Rico. *See* P.R. Laws Ann. tit. 26, §§ 1101-1137. Under said Code, insurance contracts are to be "construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, or modified by any lawful rider, endorsement, or application attached to and made a part of the policy." P.R. Laws Ann. tit. 26, § 1125. When the Insurance Code fails to provide "an interpretative approach" required for particular controversy, courts look to the Puerto Rico Civil Code for a supplemental source of law guiding contract interpretation. *See* Marina Aguila v. Den Caribbean, Inc., 490 F. Supp. 2d 244, 248 n. 5 (D.P.R. 2007). The Puerto Rico Civil Code dictates that "[if] terms of a contract are clear and leave no doubt as to the intentions of the contracting parties, the literal sense of its stipulations shall be observed." P.R. Laws Ann. tit. 31, § 3471. In such cases, "the court should confine itself to a literal application of the unambiguous terms of the contract." Gonzalez v. John Hancock Mut. Life Ins. Co., 927 F.2d 659, 660 (1st Cir. 1991) (internal quotations and edits omitted). "Under Puerto Rican law, an agreement is 'clear' when it can 'be understood in one sense

alone, without leaving any room for doubt, controversies or difference of interpretation....'" Executive Leasing Corp. v. Banco Popular de Puerto Rico, 48 F.3d 66, 69 (1st Cir.); *see also* Heirs of Ramírez v. Superior Court, 81 P.R.R. 347, 351 (1959).

It is worth noting that "[a]mbiguity does not exist simply because the parties disagree about the proper interpretation of a policy provision." Hoffman Garcia v. Metrohealth, Inc., 246 F. Supp. 3d 527, 530 (D.P.R. 2017). Instead, ambiguity "may be found where the policy's language is susceptible to more than one rational interpretation." Id. (quoting Clark School for Creative Learning, Inc. v. Philadelphia Indem. Ins. Co., 734 F.3d 51, 55 (1st Cir. 2013)). Moreover, whether an insurance policy's terms, conditions, and exclusions are clear and unambiguous is a matter of law for courts to determine. *See* Marina Aguila, 490 F. Supp. 2d at 249 (quoting Littlefield v. Acadia Ins. Co., 392 F.3d 1, 10 (1st Cir. 2004)).

**V. ANALYSIS**

First, the Court must address the HIMA Defendants' contention that Liberty did not raise its lack of coverage claim properly. (Docket No. 98 at 4-8). The HIMA Defendants failed to include adequate "citations and supporting authorities" to sustain their argument that Liberty's coverage defense needed to be presented in a cross-claim, in lieu of a summary judgment motion. L. CV. R. 7(a). Id. Moreover, the HIMA Defendants' contention that they were

not given adequate notice to conduct necessary discovery is unconvincing. Id. As discussed above, in its *Answer to the Amended Complaint*, Liberty **expressly reserved "the right to deny coverage for the instant case due to noncompliance with the notice requirement under the Policy**." (Docket No. 55 at 17-18 ¶ 29) (emphasis added). Ergo, the HIMA Defendants were given adequate notice that Liberty may raise the present defense. Lastly, the HIMA Defendants argue that they need to conduct additional discovery "concerning the time when Liberty Mutual acquired knowledge of the alleged failure to comply with the notice requirements of the insurance policy, past practices between HIMA and Liberty Mutual, the existence or not of prejudice to the insurer, and the existence of waiver from the insurer, among others." (Docket No. 98 at 7). However, these issues would not undermine the uncontested nature of the terms of the Policy, the dates of Plaintiff's claims, and the date said claims were notified to Liberty. Moreover, given that they notified of the present defense by Liberty's *Answer to the Amended Complaint*, the HIMA Defendants could, and should, have procured this information before the discovery deadline.

Currently before the Court are the terms of the claims-made insurance policy issued by Liberty to Grupo HIMA. "A claims-made policy is an insurance agreement to indemnify the insured against all claims made during a specified period, regardless of when the

incidents that gave rise to the claims occurred." Hoffman Garcia, 246 F. Supp. 3d at 530. *See also* Mercado-Boneta v. Administración del Fondo de Compensación al Paciente, 125 F.3d 9, 11 n.1 (1st Cir. 1997)) ("An occurrence policy, which provides coverage for occurrences within the policy period regardless of when the claim is made, is distinguished from a claims-made policy, which only covers the insured for claims that are actually made during the policy period."). Here, the Policy "**covers only claims first made against the insureds during the policy period** […] **and reported to the insurer as soon as practicable but in no event later than 60 days after the end of the policy period**." (Fact ¶ 3). Accordingly, the Policy requires as a condition for coverage that the Insured "**report every Claim to the Insurer as soon as practicable but in no event later than 60 days after the end of the Policy Period**." (Fact ¶ 4) (emphasis added). The "policy period" in question is defined as the period from **December 31, 2016** (the inception date) to **December 31, 2017** (the expiration date). (Facts ¶¶ 5-6). In summary, the Policy provides coverage to claims first made against Grupo HIMA within the policy period (December 31, 2016 – December 31, 2017) and that Grupo HIMA reports to Liberty as soon as practicable but no later than 60 days after the end of the policy period (December 31, 2017), *i.e.* no later than March 1, 2018.

Galarza's written request for monetary compensation to settle her claims against the HIMA Defendants was a written demand for

monetary relief with respect to an employment practices action and thus, constitutes a "claim" pursuant to the Policy's definition. (Facts ¶¶ 7, 11, 13). Said written request was made, and received, on June 30, 2016. (Facts ¶¶ 13-14). Plaintiff subsequently presented an Administrative Charge of Discrimination and the present *Complaint* against the HIMA Codefendants on July 22, 2016 and May 8, 2017, respectively. (Facts ¶¶ 15-16). Said Charge and *Complaint* reiterate the same unlawful employment practices contained in Plaintiff's written request for monetary compensation. (Facts ¶¶ 13-16). Section 9.2 of the Policy provides that:

> All Claims arising from the same Wrongful Act or Interrelated Wrongful Acts shall be deemed one Claim and subject to a single limit of liability. Such Claim shall be deemed first made on the date the earliest of such Claims is first made, regardless of whether such date is before or during the Policy Period.

(Fact ¶ 8). Pursuant to this section, Galarza's settlement request, administrative charge and *Complaint*, all of which allege the same wrongful acts, **constitute a singular claim initially made on June 30, 2016.** Id.

Grupo HIMA reported Plaintiff's claim to Liberty on June 15, 2017. (Fact ¶ 17). It is uncontroverted the Policy in effect at that time "**cover[ed] only claims first made against the insureds during the policy period**" beginning on **December 31, 2016** and ending on **December 31, 2017**. (Facts ¶¶ 3-6). However, Liberty has

established that **Galarza's claim was first made on June 30, 2016, <u>outside</u> of the applicable policy period.** (Fact ¶ 13). Moreover, Galarza presented her claim a **second time** outside of the policy period, in the form of an administrative charge with the ADU and the EEOC filed on **July 22, 2016.** (Fact ¶ 15). In other words, the claim reported by Grupo HIMA during the policy period of December 31, 2016 - December 31, 2017 of the Policy was not first made by Galarza during such policy period. *See* <u>Hoffman Garcia</u>, 246 F. Supp. 3d at 531 (granting summary judgment in favor of the insurance company on the same grounds).

The HIMA Defendants posit that Liberty "is estopped from denying coverage for failure to notify because the past practices between the parties created the reasonable expectation that coverage would be granted." (Docket No. 98 at 10). Specifically, they claim that for years Grupo HIMA would only notify a claim when the judicial complaint was served. <u>Id.</u> at 11. However, this practice would not perforce contradict the terms of the policy. Pursuant to the terms of the Policy, Grupo HIMA would still receive coverage despite only notifying judicial complaints as long as the claim against it was made during the applicable policy period.

Lastly, it is worth noting that the First Circuit has cautioned that when determining if insurance policy coverage requirements were met, "[i]t is no appropriate part of judicial business to rewrite contracts freely entered into between

sophisticated business entities." U.S. Fire Ins. Co. v. Producciones Padosa, Inc., 835 F.2d 950, 957 (1st Cir. 1987) In the case at bar, the terms of the Policy are clear and unambiguous and Grupo HIMA did not comply with an essential requirement for coverage.

## VI.   CONCLUSION

In light of the above, the Court **GRANTS** Liberty's *Motion for Summary Judgment* at Docket No. 84. The claims against Liberty are hereby **DISMISSED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 28th day of May 2020.

S/ RAÚL M. ARIAS-MARXUACH
United States District Judge
