**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

YADIRA GALARZA-CRUZ,

     **Plaintiff,**

       v.

GRUPO HIMA SAN PABLO, INC.;
CENTRO MÉDICO DEL TURABO, INC.;
JOCAR ENTERPRISES CORP.;
FERNADNO RODRÍGUEZ; LIBERTY
INTERNATIONAL UNDERWRITERS; JOHN
DOE; JANE ROE; INSURANCE
COMPANIES B AND C

     **Defendants.**

**CIVIL NO.** 17-1606 (RAM)

<u>**OPINION AND ORDER**</u>

RAÚL M. ARIAS-MARXUACH, U.S. District Judge

     Pending before the Court is Defendants' Grupo HIMA San Pablo, Inc., JOCAR Enterprises, Centro Médico del Turabo, Inc., and Fernando Rodriguez joint *Motion for Summary Judgment and Memorandum in Support*, accompanied by a *Statement of Uncontested Facts*. (Docket Nos. 85 and 85-1). For the reasons discussed below, having considered the parties' submissions in opposition and support of the same, the Court hereby **DENIES** Defendants' *Motion for Summary Judgment*. (Docket No. 85).

## I. PROCEDURAL BACKGROUND

     On May 8, 2017, Plaintiff Yadira Galarza-Cruz ("Galarza" or "Plaintiff") sued Grupo HIMA San Pablo, Inc. ("Grupo HIMA"); JOCAR

Enterprises, Inc. ("JOCAR"); Centro Médico del Turabo, Inc. ("CMT"); Joaquín Rodríguez; and Fernando Rodríguez for sex discrimination, retaliation, wrongful discharge and damages pursuant to Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.* ("Title VII") and various Puerto Rico employment statutes.[1] (Docket No. 1). Essentially, Plaintiff claims that she was sexually harassed by Fernando Rodríguez while being employed by JOCAR and CMT, companies which she alleges are joint employers with Grupo HIMA. Id. ¶¶ 30-54.

The aforementioned co-defendants filed several, individual motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (Docket Nos. 16, 21, 23, 24, 25). Consequently, this Court issued a Memorandum and Order dismissing the following causes of action: (i) claims against Joaquín Rodríguez and Fernando Rodríguez under Title VII; (ii) claims against Joaquín Rodríguez and Fernando Rodríguez under Law 115; (iii) claims against Joaquín Rodríguez under Law 17, Law 69 and Law 100; (iv) claims under Articles 1802 and 1803; and (v) Claims under Sections 1, 8 and 16 of the Puerto Rico Constitution. (Docket No. 39).

---

[1] Specifically, Puerto Rico's general anti-discrimination statute, Law No. 100 of June 30, 1959, P.R. Laws Ann. tit. 29 §§ 146, *et seq.* ("Law 100"); Puerto Rico Law No. 17 of April 22, 1988, P.R. Laws Ann. tit. 29 §§ 155, *et seq.* ("Law 17"); Puerto Rico Law No. 69 of July 6, 1985, P.R. Laws Ann. tit. 29 §§ 1321, *et seq.* ("Law 69"); Puerto Rico Law No. 115 of December 20, 1991, P.R. Laws Ann.  29 §§ 194, *et seq.* ("Law 115"); Puerto Rico's Unjust Discharge Act, Law No. 80 of May 30, 1976, P.R. Laws Ann. tit. 29 §§ 185a, *et seq.* ("Law 80"); Articles 1802 and 1803 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31 §§ 5141 and 5142; and Sections 1, 8 and 16 of Article II of the Puerto Rico Constitution.

In light of the Memorandum and Order, Plaintiff filed an *Amended Complaint*, eliminating Joaquín Rodríguez as a co-defendant and the claims dismissed by the Court. (Docket No. 46). Additionally, Plaintiff substituted the previously unnamed co-defendant "insurance Company A" with Liberty Mutual Insurance Company ("Liberty"), who has an insurance policy covering Grupo HIMA, JOCAR, and CMT. Id. ¶¶ 24-25. The remaining co-defendants, including Liberty, filed timely, individual answers to the *Amended Complaint*. (Docket Nos. 48, 49, 50, 51, 55).

On May 31, 2019, Grupo HIMA, JOCAR, CMT, and Fernando Rodríguez, (collectively, "Defendants") filed a joint *Motion for Summary Judgment and Memorandum in Support*, with an accompanying *Statement of Uncontested Facts*. (Docket Nos. 85 and 85-1). Co-defendant Liberty subsequently filed a *Motion Joining Defendants' Motion for Summary Judgment*. (Docket No. 88). Plaintiff filed a *Response in Opposition to Defendants' Motion for Summary Judgment*, accompanied by a *Statement of Additional Facts Preventing the Entry of Summary Judgment*. (Docket Nos. 102, 102-1 at 43-68). Furthermore, Defendants filed a *Reply* to Plaintiff's *Opposition* and Plaintiff filed a *Surreply* to Defendant's *Reply*. (Docket Nos. 115 and 125, respectively).

## II.  LEGAL STANDARD

Motions for summary judgment are governed by Fed. R. Civ. P. 56(a). Summary judgment is proper if the movant shows that (1)

there is no genuine dispute as to any material fact and (2) they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A dispute is 'genuine' if the evidence about the fact is such that a reasonable jury could resolve the point in favor of the non-moving party." Thompson v. Coca-Cola Co., 522 F.3d 168, 175 (1st Cir. 2008). A fact is considered material if it "may potentially 'affect the outcome of the suit under governing law.'" Albite v. Polytechnic Univ. of Puerto Rico, Inc., 5 F. Supp. 3d 191, 195 (D.P.R. 2014) (quoting Sands v. Ridefilm Corp., 212 F.3d 657, 660-661 (1st Cir. 2000)).

The moving party has "the initial burden of demonstrat[ing] the absence of a genuine issue of material fact with definite and competent evidence." Mercado-Reyes v. City of Angels, Inc., 320 F. Supp. 344, at 347 (D.P.R. 2018) (quotation omitted). The burden then shifts to the nonmovant, to present "competent evidence to rebut the motion." Bautista Cayman Asset Co. v. Terra II MC & P, Inc., 2020 WL 118592, at 6* (quoting Méndez-Laboy v. Abbott Lab., 424 F.3d 35, 37 (1st Cir. 2005)). A nonmoving party must show "that a trialworthy issue persists." Paul v. Murphy, 948 F.3d 42, 49(1st Cir. 2020) (quotation omitted).

While a court will draw all reasonable inferences in favor of the non-movant, it will disregard conclusory allegations, unsupported speculation and improbable inferences. See Johnson v. Duxbury, Massachusetts, 931 F.3d 102, 105 (1st Cir. 2019).

Moreover, the existence of "some alleged factual dispute between the parties will not affect an otherwise properly supported motion for summary judgment." Scott v. Harris, 550 U.S. 372, 379 (2007) (quotation omitted). Hence, the court should review the record in its entirety and **refrain from making credibility determinations or weighing the evidence**. *See* Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 135 (2000).

In this District, summary judgment is also governed by Local Rule 56. *See* L. CV. R. 56(c). Per this Rule, an opposing party must "admit, deny or qualify the facts supporting the motion for summary judgment by reference to each numbered paragraph of the moving party's statement of material facts." Id. Furthermore, unless the fact is admitted, the opposing party must support each denial or qualification with a record citation. Id.

Additionally, Local Rule 56(c) allows an opposing party to submit additional facts "in a separate section." L. CV. R. 56(c). Given that the plain language of Local Rule 56(c) specifically requires that any additional facts be stated in a separate section, parties are prohibited from incorporating numerous additional facts within their opposition. *See* Natal Pérez v. Oriental Bank & Trust, 291 F. Supp. 3d 215, 218-219 (D.P.R. 2018) (quoting Carreras v. Sajo, Garcia & Partners, 596 F.3d 25, 32 (1st Cir. 2010) and Malave-Torres v. Cusido, 919 F.Supp. 2d 198, 207 (D.P.R. 2013)).

If a party opposing summary judgment fails to comply with Local Rule 56(c)'s strictures, "a district court is free, in the exercise of its sound discretion, to accept the moving party's facts as stated." Caban Hernandez v. Philip Morris USA, Inc., 486 F.3d 1, 7 (1st Cir. 2007). Thus, litigants ignore this rule at their peril. *See* Natal Pérez, 291 F. Supp. 3d at 219 (citations omitted).

### III. FINDINGS OF FACT

To make findings of fact, the Court analyzed Defendant's *Statement of Uncontested Facts* ("*DSUF*") (Docket No. 85-1) and Plaintiff's *Statement of Contested or Disputed Material Facts as to which Genuine Issues Exist for trial, and Statement of Additional Facts Preventing the Entry of Summary Judgment* ("*PSAF*") (Docket No. 102-1).[2]

After **only crediting material facts** that are **properly supported by a record citation and uncontroverted,** the Court makes the following findings of fact:

1. Co-defendant Grupo HIMA San Pablo, Inc. ("Grupo HIMA") is a holding company with two subsidiaries: co-defendant Centro Medico del Turabo, Inc. ("CMT") and co-defendant JOCAR Enterprises ("JOCAR"). (Docket No. 85-1 ¶ 1).

---

[2] References to a specific Finding of Fact shall be cited in the following manner: (Fact ¶ _).

2. Joaquín Rodríguez formed all the corporations that comprise Grupo HIMA. Id. ¶ 15.

3. Joaquín Rodríguez was the chairman of the board and Chief Executive Officer of Grupo HIMA prior to his retirement. Id. ¶ 17.

4. Joaquín Rodríguez is currently retired but has a consulting contract with Grupo HIMA and owns approximately 35% of the shares of Grupo HIMA. The other stockholders are Carlos Piñero, who owns 34% of the shares, and approximately 90 other stockholders. Id. ¶ 16.

5. CMT has the following subsidiaries: HIMA San Pablo Properties, HIMA San Pablo Captive Insurance Company Limited and SabiaMed. Id. ¶¶ 3-4.

6. There are five (5) HIMA hospitals: Caguas, Bayamón, Fajardo, Humacao and Cupey. These hospitals are unincorporated units of CMT "doing business as" the names of each hospital. (Docket Nos. 85-1 ¶¶ 5-7; 85-3 at 50).

7. CMT has several centralized departments that provide services to the HIMA hospitals, including accounting, marketing, human resources and legal. (Docket No. 85-1 ¶ 6).

8. The centralized operation of Human Resources for the hospitals is led by Eric Perez. Additionally, each hospital has its own Human Resources director, manager or coordinator

who reports to each hospital's administrator as well as Eric
Perez. Id. ¶ 8.

9. JOCAR is a corporation that provides different services to
HIMA hospitals and corporations including, printing,
messenger services, environmental quality (janitorial
services), cafeteria, and pharmacy. Id. ¶ 9.

10. JOCAR has several subsidiaries, including an ambulance
company and a security services company. Id. ¶¶ 3, 11.

11. When JOCAR was created, it provided janitorial services
exclusively to HIMA hospitals. (Docket No. 85-1 ¶ 12; 102-4
at 7).

12. Co-defendant Fernando Rodríguez, Joaquín Rodríguez's brother,
served as vice-president of JOCAR since its creation in 2005.
(Docket No. 85-1 ¶ 19).

13. Fernando Rodríguez was appointed vice-president of JOCAR by
Carlos Piñero. Id. ¶ 20.

14. Carlos Piñero, the president of Grupo HIMA was Fernando
Rodríguez's boss at HIMA and also at JOCAR. (Docket No. 102-
4 at 5, 11).

15. Prior to becoming JOCAR's vice-president, Fernando Rodríguez
worked for HIMA hospitals and supervised about 300 employees.
(Docket No. 85-1 ¶ 24).

16. Once he was named JOCAR's vice-president, Fernando Rodríguez continued to supervise these 300 HIMA hospital employees. <u>Id.</u> 27.

17. On February 22, 2010, Galarza began working for JOCAR as a Group Leader at the HIMA San Pablo Bayamón Hospital. (Docket No. 85-1 ¶ 40; 85-7 at 2).

18. On February 17, 2010, Galarza was given a copy of JOCAR's Employee guide, which contained JOCAR's policy against sexual harassment. (Docket No. 85-1 ¶¶ 41-42).

19. On April 13, 2011, Galarza certified that she received orientation about the sexual harassment policy. Galarza also received a seminar on sexual harassment. <u>Id.</u> ¶ 43.

20. On December 1, 2012, Galarza was transferred from the Bayamón hospital to the Caguas hospital. <u>Id.</u> ¶ 44.

21. While at the Caguas hospital, Galarza was promoted to Manager of the Environmental Quality Department at JOCAR. <u>Id.</u> ¶ 45.

22. As Environmental Quality Group Manager, Galarza was supervised by Fernando Rodríguez. <u>Id.</u> ¶ 46.

23. JOCAR ceased to provide janitorial services to HIMA hospitals. <u>Id.</u> ¶¶ 13, 48.

24. The JOCAR employees that provided janitorial services at HIMA hospitals were hired by CMT and became employees of the hospitals in which they worked. (Docket Nos. 85-1 ¶¶ 14, 49; 85-5 at 17).

25. As one of said employees, on January 1, 2013, Galarza was transferred from JOCAR to HIMA San Pablo Caguas hospital. (Docket Nos. 85-1 ¶ 47; 102-5 at 7).

26. Once JOCAR no longer provided janitorial services, Fernando Rodríguez was no longer Galarza's direct supervisor. (Docket Nos. 85-1 ¶ 50; 102-6 ¶ 17).

27. Luisa Rodríguez became the Director of the Environmental Quality Department and was Galarza's supervisor between a year and half and two years. (Docket No. 85-1 ¶¶ 51, 67).

28. On March 14, 2014, Galarza sent a letter to Mr. Joaquin Rodríguez to inform him of various issues and moments of "discomfort" she had with Luisa Rodríguez. (Docket Nos. 85-1 ¶ 70; 85-11).

29. Galarza was subsequently supervised by Elsa Maldonado and Maria Jacobo. (Docket No. 85-1 ¶¶ 65, 69)

30. Galarza did not complain about sexual harassment at HIMA because she allegedly feared losing her job, amongst other reasons. Id. ¶ 76.

31. Galarza was terminated on March 30, 2016. Id. ¶ 92.

32. Joaquín Rodríguez gave the order to dismiss Galarza without consulting anyone prior to deciding to terminate her. Id. ¶¶ 96, 100.

33. On July 11, 2016, Galarza filed an administrative charge for sex discrimination and retaliation against Defendants with

the Anti-Discrimination Unit of the Puerto Rico Department of Labor and Human Resources and the Equal Employment Opportunity Commission ("EEOC"). (Docket Nos. 1-1; 1-2).

34. In her administrative charge, Galarza posits that the last act of discrimination occurred on March 30, 2016. Furthermore, Plaintiff describes various instances of alleged sexual harassment and generally claims that:

> While working for Grupo HIMA San Pablo and for JOCAR Enterprises I was a victim of sexual harassment, sex discrimination, and retaliation in my employment. The sexual harassment consisted of unwelcome sexual advances and physical conduct of sexual nature and motivated by my gender that included among others, numerous unwanted physical contacts, constantly staring at my body in a lascivious way, and making sexually-related comments. All of this was done by my Mr. Fernando Rodríguez, who occupied the position of Director of the Environmental Quality Department, who most of the time was my direct supervisor, and who created for me a hostile, offensive, and intimidating work environment.

(Docket No. 1-1 at 1-2).

## IV.  ANALYSIS

### A.   The Hostile Work Environment Claim

Title VII makes it unlawful for an employer to discharge or otherwise discriminate against any individual with respect to their "compensation, terms, conditions or privileges of employment" because of an individual's sex. 42 U.S.C.A. § 2000e-2. It is well established that sexual harassment, in the form of

a hostile work environment, can constitute sex discrimination. *See* Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 751-54 (1998). "Title VII […] allows a plaintiff to prove unlawful discrimination by showing that the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." O'Rourke v. City of Providence, 235 F.3d 713, 728 (1st Cir. 2001) (internal quotations omitted). In other words, an employer can be held liable if they fail to provide a harassment free workplace by "committing or tolerating sexual harassment against an employee, […] effectively altering the terms of the victim's job." Medina-Rivera v. MVM, Inc., 713 F.3d 132, 136-137 (1st Cir. 2013).

Likewise, the three Puerto Rico statutes invoked by Plaintiff also prohibit sex discrimination and harassment, namely: Law 100 (prohibiting discrimination in the workplace because of sex and other protected categories); Law 69 (prohibiting and penalizing sex discrimination in the workplace); and Law 17 (prohibiting sexual harassment in the work place). In light of "the considerable overlap between federal and Puerto Rico employment discrimination and sexual harassment law," the Court shall jointly analyze the present case's claims pursuant to federal and Puerto Rico law for the purpose of adjudicating Defendants' *Motion for Summary Judgment*. *See* Jelu Iravedra v. Municipality of Guaynabo, 2018 WL

5023314, at *3 (D.P.R. 2018) (citing Pérez-Cordero v. Wal-Mart Puerto Rico, Inc., 656 F.3d 19, 26-27 n. 10 (1st Cir. 2011); Sánchez v. Elec. Power Auth., 1997 P.R. Offic. Trans. 878, 520 (P.R. Suprm. Ct. 1997)).

To succeed in a sexually-based hostile work environment claim, a plaintiff must prove the following six (6) elements:

> (1) that she (or he) is a member of a protected class; (2) that she was subjected to unwelcome sexual harassment; (3) that the harassment was based upon sex; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and create an abusive work environment; (5) that sexually objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so; and (6) that some basis for employer liability has been established.

O'Rourk, 235 F.3d at 728 (citing Faragher v. City of Boca Raton, 524 U.S. 775, 787-89 (1998); Harris v. Forklift Sys., Inc., 510 U.S. 17, 20-23 (1993); Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 65-73 (1986)). Applying this hostile work environment test "requires an assessment of the totality of the circumstances," such as the severity and frequency of the conduct; "whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Valentin-Almeyda v. Municipality Of Aguadilla, 447 F.3d 85, 94 (1st Cir. 2006) (quotations omitted).

Notably, there is no single, precise test to determine whether a plaintiff presented sufficient evidence to survive summary judgment on a hostile work environment sexual harassment claim. *See* Pomales v. Celulares Telefónica, Inc., 447 F.3d 79, 83 (1st Cir. 2006); Jelu Iravedra, 2018 WL 5023314, at *3. Given that "this inquiry is fact specific, the determination is often reserved for a fact finder," however, summary judgment is appropriate to police that the basic elements of a hostile environment claim are met. Pomales, 447F.3d at 83 (citations and quotations omitted). *See also* Marrero v. Goya of Puerto Rico, Inc., 304 F.3d 7, 19 (1st Cir. 2002) ("Subject to some policing at the outer bounds, it is for the jury to weigh those factors and decide whether the harassment was of a kind or to a degree that a reasonable person would have felt that it affected the conditions of her employment.") (internal quotations omitted).

Once a plaintiff shows that a hostile work environment existed, determining an employer's liability depends on whether it was a supervisor or a co-worker that committed the sexual harassment. In this context, a supervisor refers to an employee who has been empowered with the authority to take "tangible employment actions against the victim, *i.e.*, to effect a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in

benefits." <u>Vance v. Ball State Univ.</u>, 570 U.S. 421, 431-32 (2013) (internal quotations omitted). "When a supervisor creates a hostile work environment, the employer is vicariously liable for it, subject, however, to a possible affirmative defense […] familiarly known as the Faragher/Ellerth defense."<u>Noviello v. City of Bos.</u>, 398 F.3d 76, 94 (1st Cir. 2005) (citing <u>Ellerth</u>, 524 U.S. at 765; <u>Faragher</u>, 524 U.S. at 807-08)). Under this defense, the employer must show (1) that it "exercised reasonable care" to prevent and promptly correct the harassment; and (2) that the employee "unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer" or to otherwise avoid harm. <u>Ellerth</u>, 524 U.S. at 765.

This defense is unavailable to employers in two instances. First, the Supreme Court has held that employers cannot invoke the Faragher/Ellerth defense when "the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion or undesirable assignment." <u>Faragher</u>, 425 U.S. at 808. Second, there is consensus amongst circuit courts that the "the *Faragher/Ellerth* affirmative defense is unavailable when the supervisor in question is the employer's proxy or alter ego." <u>Townsend v. Benjamin Enterprises, Inc.</u>, 679 F.3d 41, 52 (2d Cir. 2012) (collecting cases). *See also* <u>Rios v. Municipality of Guaynabo</u>, 938 F. Supp. 2d 235, 253 (D.P.R. 2013) ("While the First Circuit has not shed light on this matter, every other Court of

Appeals to have considered this issue has held that the Faragher/Ellerth affirmative defense is unavailable when the supervisor in question is the employer's proxy or alter ego.") (internal quotations omitted). Accordingly, "vicarious liability **automatically** applies when the harassing supervisor is […] '**indisputably within that class of an employer organization's officials who may be treated as the organization's proxy.**'" Johnson v. West, 218 F.3d 725, 730 (7th Cir. 2000) (quoting Faragher, 524 U.S. at 789) (emphasis added). This "class" may consist of owners, proprietors, partners, corporate officers and supervisors holding a "sufficiently high position 'in the management hierarchy[.]'" Ackel v. Nat'l Commc'ns, Inc., 339 F.3d 376, 383 (5th Cir. 2003) (quoting Faragher at 789–790). *See also* Johnson, 218 F.3d at 730.

On the other hand, when a co-worker is responsible for creating a hostile work environment, an employer is liable "if the harassment [by a co-worker] is causally connected to some negligence" on behalf of the employer. Noviello, 398 F.3d at 95. (citations omitted). In other words, "that the employer knew or should have known about the harassment, yet failed to take prompt action to stop it." Id. (citing Crowley v. L.L. Bean, Inc., 303 F.3d 387, 401 (1st Cir.2002)). In these types of cases, the employer "cannot assert the *Faragher/Ellerth* defense to avoid liability and must prevail under the traditional negligence standard to escape liability." Figueroa Garcia v. Lilly Del

Caribe, Inc., 490 F. Supp. 2d 193, 206 (D.P.R. 2007) (citing Ortiz
v. Hyatt Regency Cerromar Beach Hotel, Inc., 422 F.Supp.2d 336,
342 (D.P.R. 2006)).

In the case at bar, Plaintiff testified in her deposition
that she was sexually harassed by Fernando Rodríguez when he was
her direct supervisor at JOCAR and after she was transferred to
CMT. (Fact ¶ 34). Fernando Rodríguez expressly denied in his
deposition the specific instances of alleged sexual harassment.
(Docket No. 85-5 at 19-27). Thus, there is a genuine issue of
material fact warranting a jury trial as to whether the alleged
harassment by Fernando Rodriguez occurred. Galarza and Fernando
Rodríguez's opposing versions of events are sustained by
deposition testimony under oath.[3] Adjudicating the matter would
require "[c]redibility determinations, the weighing of the
evidence, and the drawing of legitimate inferences from the facts"
all of which "are jury functions, not those of a judge[.]" Anderson
v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

Given the conflicting testimony on the substance of
Galarza's harassment claims, Defendants' contend in their *Motion*

---

[3]  In her deposition, Plaintiff describes various instances of sexual harassment
allegedly committed by Fernando Rodríguez. (Docket No. 102-8 at 24-43).
Furthermore, Plaintiff provides deposition testimony and/or sworn statements of
various individuals, including her co-worker Guillermo De Jesús-Cordero, who
allegedly witnessed some of the instances described by Plaintiff in her
deposition. (English translations at Docket Nos. 102-13; 102-14; 102-16; 110-
1; 110-2; 110-3; 110-4). On the other hand, in his deposition, Fernando
Rodríguez testified that he did not harass Plaintiff and specifically denied
ever commenting on Galarza's appearance, being attracted to her, suggesting
that she have an abortion, or touching her. (Docket No. 85-5 at 19-27).

*for Summary Judgment* that no basis for employer liability has been established pursuant to multiple affirmative defenses. (Docket No. 85 at 2-17). First, Defendants posit that Plaintiff's claims against JOCAR are time barred because Galarza did not file a timely administrative complaint with the Equal Employment Opportunity Commission (the "EEOC") nor with the Anti-Discrimination Unit ("ADU"). (Docket No. 85 at 5-6). This alone does not shield Defendants of liability. By their very nature, hostile environment claims involve repeated conduct that "occurs over a series of days or perhaps years" and "therefore cannot be said to occur on any particular day." National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 115 (2002). "Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." Id. at 117. On July 11, 2016, Plaintiff filed an administrative charge with the ADU and the EEOC against Defendants for sexual discrimination and retaliation. (Fact ¶ 33). Pursuant to said charge, the last instance of discrimination occurred on March 30, 2016, and thus, the charge was timely filed. (Fact ¶ 34). Defendants have not contested that said charge was untimely with regards to the alleged instances of sexual harassment that occurred once Plaintiff no longer worked for JOCAR. Furthermore, in her administrative charge Plaintiff explicitly alleges that she was subjected to sexual harassment both while at

JOCAR and after. Id. Accordingly, the Court may consider the entire period of the alleged hostile work environment to determine liability.

Defendants also claim that the Faragher/Ellerth defense applies to the sexual harassment that allegedly occurred while Fernando Rodriguez was Galarza's direct supervisor at JOCAR. Defendants contend that they "exercised reasonable care" by implementing an anti-sexual harassment policy and that Galarza unreasonably failed to take advantage of Defendants' internal reporting procedures. (Docket No. 85 at 12-15). *See also* Ellerth, 524 U.S. at 765. It is uncontested that Plaintiff received JOCAR's anti-sexual harassment policy, as well as relevant training, (Facts ¶¶ 18-19) and that she did not report the alleged harassment (Fact ¶ 29). However, it is also uncontested that Fernando Rodríguez was not only Galarza's direct supervisor, but also the vice-president of JOCAR. (Fact ¶ 13). As vice-president of JOCAR, Fernando Rodríguez could conceivably qualify as JOCAR's proxy or alter-ego. *See* Johnson v. West, 218 F.3d 725, 730 (7th Cir. 2000). Thus, the Faragher/Ellerth defense could be inapplicable and Defendants would be automatically vicariously liable if sexual harassment is proven. However, the record is insufficient to make a final assessment regarding Fernando Rodríguez's proxy status and the applicability of the Faragher/Ellerth defense.

Defendants also contend that once Galarza no longer worked for JOCAR, Fernando Rodríguez "did not have any supervisory duties over Plaintiff" and thus "the employer liability standard is that of co-worker of third-party." (Docket No. 85 at 15). Accordingly, Defendants argue that there is "no evidence in this case to show that Defendants knew or should have known about the harassment Plaintiff claims she was subjected to." Id. at 16. While it is uncontested that Fernando Rodríguez ceased to be Plaintiff's direct supervisor in 2013 (Fact ¶ 26), it is unclear what position or seniority Fernando Rodríguez maintained. In fact, the record is silent in this regard. Neither party indicates what position, if any, Fernando Rodríguez held at HIMA or CMT after serving as JOCAR's vice-president.[4] In his deposition excerpts, Fernando Rodríguez testified that he was a member of the hospital's operational committee and attended said committee's meetings on a regular basis. (Docket No. 102-4 at 22-23). What decision making power Fernando Rodríguez had in this position remains to be determined. Consequently, there exists genuine issues of material fact regarding whether Fernando Rodríguez was a proxy or alter-ego for CMT or HIMA and thus, if Defendants can raise the Faragher/Ellerth defense.

---

[4] In their Reply, Defendants state that Fernando Rodríguez ceased to work at HIMA after 2005 when he became JOCAR's vice-president. (Docket No. 115 at 6) is not supported by the cited record and is apparently contradicted by Fernando Rodríguez's own testimony.

**B.    Single or Joint Employer Liability under Title VII**

Under the single and joint employer doctrines, several
entities, generally corporations, can be found liable for
discrimination as if they were the sole employer of the victim.
The First Circuit has upheld that in certain circumstances, "two
entities may be sued and held liable as a 'single employer'
under Title VII." Romano v. U-Haul Int'l, 233 F.3d 655, 662 (1st
Cir. 2000). "Under the 'single employer' doctrine, two nominally
separate companies may be so interrelated that they constitute
a single employer subject to liability under Title VII." Torres-
Negron v. Merck & Co., Inc., 488 F.3d 34, 40-41 (1st Cir. 2007).
(citing NLRB v. Browning-Ferris Indus., Inc., 691 F.2d 1117, 1122
(3d Cir.1982)). To determine whether two entities constitute a
single employer, most circuits use the "integrated enterprise
test." Molina Viera v. Yacoub, 425 F. Supp. 2d 202, 204 (D.P.R.
2006) (citing Romano, 233 F.3d 655, 665 (1st Cir. 2000)). Pursuant
to the integrated enterprise test, a "single employer exists if
the following four factors are present: 1) interrelation of
operations; 2) common management; 3) centralized control of labor
operations; and 4) ownership." Id.

Although Defendants concede that both CMT and JOCAR are owned
by Grupo HIMA, they argue that said entities do not constitute a
single employer under the remaining three factors of the integrated
enterprise test. (Docket No. 85 at 8-9). First, Defendants claim

that JOCAR and CMT are not interrelated because the nature of the businesses are different. Id. at 9. The Court notes that although the nature of the two business was distinct, there is evidence of a close, reciprocal relationship between the entities. The record shows that JOCAR was created by Grupo HIMA to provide janitorial services to CMT hospitals. (Fact ¶ 11). Likewise, there is evidence of an interchange of employees between said companies. (Facts ¶ 24). See also Torres-Negron, 488 F.3d at 42. Moreover, the nature of JOCAR's current business and its relationship with HIMA and CMT has not been established. As to the existence of common management, Defendants state that JOCAR and CMT each had its own management team, which in the case of JOCAR, was led by Fernando Rodríguez. (Docket No. 85 at 8). This does not suffice to rule out common management between both entities, especially in light of Fernando Rodríguez deposition testimony affirming that Carlos Piñero was his supervisor both at HIMA and JOCAR. (Fact ¶ 14). Finally, even if CMT's centralized operation of human resources for its hospitals did not oversee JOCAR's human resources, Defendants confirm that Fernando Rodríguez continued to supervise 300 HIMA employees as JOCAR's vice-president. (Fact ¶ 16). Considering the above, the Court cannot determine as a matter of law whether or not JOCAR, CMT, and Grupo HIMA are single employers under Title VII. Defendants have not provided sufficient, uncontroverted proof to

reach this decision at the summary judgment stage. Wherefore, a jury is required to make the pertinent findings of fact.

On the other hand, two or more entities can be considered "joint employers" for Title VII liability purposes. "A joint employer relationship exists where two or more employers exert significant control over the same employees and share or co-determine those matters governing essential terms and conditions of employment." Holyoke Visiting Nurses Ass'n v. NLRB, 11 F.3d 302, 306 (1st Cir. 1993) (citations omitted). To determine if such a relationship exists, the following factors are relevant: "supervision of the employees' day-to-day activities; authority to hire, fire, or discipline employees; authority to promulgate work rules, conditions of employment, and work assignments; participation in the collective bargaining process; ultimate power over changes in employer compensation, benefits and overtime; and authority over the number of employees." Rivera-Vega v. ConAgra, Inc., 70 F.3d 153, 163 (1st Cir. 1995) (citing W.W. Grainger, Inc. v. NLRB, 860 F.2d 244, 247 (7th Cir. 1988); Clinton's Ditch Cooperative Co. v. NLRB, 778 F.2d 132, 138-39 (2d Cir.1985), cert. denied, 479 U.S. 814, 107 S.Ct. 67, 93 L.Ed.2d 25 (1986); Ref-Chem Co. v. NLRB, 418 F.2d 127, 129 (5th Cir. 1969)). Consequently, "[w]hether an employer possesses sufficient indicia of control to be an employer is essentially a factual issue." Fortunato v.

Capitol Sec. Police, Inc., 2007 WL 2688695, at *3 (D.P.R. 2007)
(citation omitted).

    As discussed above, the record shows a certain degree of
interrelation of Grupo HIMA, CMT and JOCAR's employment matters.
It remains unclear to what degree. Therefore, whether said entities
are joint employers under Title VII remains contested and cannot
be determined via the present summary judgment motion.

   **C.   The Retaliation Claim**

    Title VII prohibits employers from discriminating against an
employee because they have "opposed any practice made an unlawful
employment practice" by Title VII or because they have "made a
charge, testified, assisted or participated in any manner in an
investigation, proceeding, or hearing under this subchapter." 42
U.S.C. § 2000e-3(a).

    To succeed on a retaliation claim, a plaintiff must prove
three elements: (1) that they undertook protected conduct; (2)
that their employer took material adverse action against them; and
(3) a causal nexus existing between elements one and two. *See*
Medina-Rivera v. MVM, Inc., 713 F.3d at 139. Trivial harms, "petty
slights or minor annoyances that often take place at work and that
all employees experience" do not rise to the level of *material*
adversity. Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53,
68 (2006). Instead, materially adverse actions are those that are

likely to deter a reasonable employee from complaining about the discrimination. Id.

Defendants claim that Plaintiff did not present a *prima facie* case because (1) she has not provided evidence of engaging in a protected activity; (2) the incidents she claims she suffered with Luisa Rodríguez, her supervisor, are not materially adverse; and (3) because there is no casual connection between said instances or her termination with any alleged protected activity. (Docket No. 85 at 18).

Plaintiff posits that she engaged in protected activity by rejecting Fernando Rodríguez's alleged acts of sexual harassment. (Docket No. 102 ¶ 90). Several Circuit courts have found that rejecting the sexual advances of a supervisor constitutes "oppos[ing]... unlawful practices" under Title VII's retaliation provision. 42 U.S.C. § 2000e-3(a). *See* E.E.O.C. v. New Breed Logistics, 783 F.3d 1057, 1067 (6th Cir. 2015) ("demand[ing] that a supervisor cease his/her harassing conduct constitutes protected activity covered by Title VII."); Ogden v. Wax Works, 214 F.3d 999, 1007 (8th Cir. 2000) (rejecting advances and telling supervisor to stop his offensive conduct constituted "the most basic form of protected conduct"); *Cf.* Xiaoyan Tang v. Citizens Bank, N.A., 821 F.3d 206, 221 n. 14 (1st Cir. 2016) (declining to resolve the issue of whether a plaintiff refusing a supervisor's sexual advances consists of protected activity). Defendants did

not address this argument in their *Reply*. (Docket No. 115). As
explained above, whether the alleged harassment occurred, as well
as Fernando Rodriguez's position as Plaintiff's supervisor, or a
corporate proxy, has yet to be proven.

     As to the remaining elements, Galarza claims that Luisa
Rodríguez was assigned to be her supervisor to "screw her over" as
part of Fernando Rodríguez's plans to "make Plaintiff's life
miserable to force her to resign and/or give in to his sexual
advances." (Docket No. 102 ¶ 93). Plaintiff supports this
contention with her *Declaration Under Penalty of Perjury* and her
deposition testimony. (Docket Nos. 102-6 ¶¶ 11-12; 102-8 at 10,
21; 102-9 at 2). Galarza recounts specific actions Luisa Rodríguez
took against her and that allegedly rise to the level of being
"materially adverse," such as excluding Plaintiff from meetings,
placing her desk inside Plaintiff's office, transferring
Plaintiff's secretary during her pregnancy, and others. (Docket
No. 102 ¶ 93). Despite Defendants' claims to the contrary, if
ultimately proven, said conduct could qualify as materially
adverse, in that it "would likely have dissuaded a reasonable
worker from making or supporting a charge of discrimination" or
otherwise opposing unlawful conduct. Burlington N. & Santa Fe Ry.
Co., 548 U.S. at 60. (citations omitted). In his deposition,
Fernando Rodriguez claims he did not appoint Luisa Rodríguez to be
Galarza's supervisor. (Docket No. 85-5 at 24).

Given Defendants' denials that Galarza engaged in protected conduct and suffered materially adverse actions because of it, there are genuine issues of material fact to be determined that would require credibility determinations and weighing of the testimonial evidence. *See* Talavera-Ibarrondo v. Municipality of San Sebastian, 824 F. Supp. 2d 254, 263 (D.P.R. 2011) (denying motion for summary judgment on plaintiffs' Title VII retaliation claims because credibility judgments were required to determine if retaliation in fact occurred). As discussed above, the Court may not partake in such jury functions. *See* Anderson, 477 U.S. at 255. Therefore, summary judgment is precluded with regards to Plaintiff's retaliation cause of action.

D.  **Wrongful Termination Claim**

P.R. Act No. 80 of May 30, 1976 ("Law 80") requires that employers provide severance compensation for at-will employees who are discharged without good cause. *See* P.R. Laws Ann. tit. 29, § 185a; Ruiz-Sanchez v. Goodyear Tire & Rubber Co., 717 F.3d 249, 254 (1st Cir. 2013). An employee seeking compensation under this Law 80 "bears the initial burden of **alleging unjustified dismissal and proving actual dismissal.**" Martinez v. Nordisk, 397 F. Supp. 3d 207, 222 (D.P.R. 2019) (emphasis added) (citation omitted). "After, the employer must show, by a preponderance of the evidence, the dismissal was made for good cause." Id. Law 80 defines just cause for dismissal as "that which is not based on legally

prohibited reasons and on a whim of the employer." P.R. Laws Ann. tit. 29, § 185b. Furthermore, Law 80 provides the following non-exhaustive list of just causes for termination:

> (a) That the employee engages in a pattern of improper or disorderly conduct.
> (b) That the employee engages in a pattern of deficient, inefficient, unsatisfactory, poor, slow or negligent performance. This includes noncompliance with the employers' quality and safety rules and standards, low productivity, l ack of competence or ability to perform the work at reasonable levels as required by the employer and repeated complaints from the employer's customers.
> (c) The employee's repeated violations of the reasonable rules and regulations established for the operation of the establishment, provided, that a written copy thereof has been timely furnished to the employee.
> (d) Full, temporary, or partial closing of the operations of the establishment. In those cases in which the employer has more than one office, factory, branch or plant, the full, temporary or partial closing of operations of any of these establishments where the discharged employee works shall constitute just cause for discharge pursuant to this section.
> (e) Technological or reorganization changes as well as changes of style, design, or the nature of the product made or handled by the establishment, and changes in the services rendered to the public.
> (f) Downsizing made necessary by a reduction in the foreseen or prevailing volume of production, sales, or profits at the time of the discharge or for the purpose of increasing the establishment's competitiveness or productivity.

Id. "Courts have found good cause for termination exists where an employee violated an employer's internal procedures, and where an

employee failed to follow rules and supervisory instructions."
Hoyos v. Telecorp Commc'ns, Inc., 405 F. Supp. 2d 199, 206 (D.P.R.
2005), aff'd, 488 F.3d 1 (1st Cir. 2007) (internal citations
omitted). It is worth noting that repeated violations are not
invariably required by the statute, "particularly where an initial
offense is so serious, or so reflects upon the employee's
character, that the employer reasonably should not be expected to
await further occurrences." Gonzalez v. El Dia, Inc., 304 F.3d 63,
75 (1st Cir. 2002).

Galarza has met her initial burden under Law 80. It is
uncontested that she was terminated on March 30, 2016 (Fact ¶ 31)
and she alleges that said dismissal was unjust. (Docket Nos. 102,
114). On their part, Defendants contend that Galarza was dismissed
for just cause after Joaquín Rodríguez allegedly received
complaints that she was treating her employees poorly. (Docket No.
85-1 ¶¶ 94-95). To prove this, Defendants merely provide Joaquín
Rodríguez's deposition testimony summarizing what employees told
him about Plaintiff at a meeting held the day before her
termination. (Docket No. 85-3 at 14-20). The Court cannot give
weight to this statement because it constitutes inadmissible
hearsay. See Fed. R. Evid. 801(c) ("'Hearsay'" means a statement
that: (1) the declarant does not make while testifying at the
current trial or hearing; and (2) a party offers in evidence to
prove the truth of the matter asserted in the statement."). In

their *Reply* at Docket No. 115, Defendants did not contest Plaintiff's assertion that said statement constitutes hearsay nor did they argue that it qualified for a hearsay exception. "It is black-letter law that hearsay evidence cannot be considered on summary judgment." <u>Davila v. Corporacion De Puerto Rico Para La Difusion Publica</u>, 498 F.3d 9, 17 (1st Cir. 2007). Therefore, Defendants have not shown, by preponderance of the evidence, that Plaintiff was dismissed with just cause.

## V. CONCLUSION

In light of the above, genuine issues of material facts preclude dismissing Plaintiff's claims at the *Motion for Summary Judgment* stage. For the foregoing reasons, the Court **DENIES** Defendants' *Motion for Summary Judgment* at Docket No. 85.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 28th day of May 2020.

S/ RAÚL M. ARIAS-MARXUACH
United States District Judge
